# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**CHRISTAL MCCOLLIM,**

        **Plaintiff,**

    v.                                            Case No. 18-CV-2028

**ANDREW M. SAUL,**

        **Defendant.**

## DECISION AND ORDER

### PROCEDURAL HISTORY

Plaintiff Christal Mccollim alleges she has been disabled since January 2, 2009, due to fibromyalgia, severe anemia, seronegative spondyloarthropathies, migraine headaches, and post-traumatic stress disorder. (Tr. 72, 254.) In April 2015 she applied for disability insurance benefits and supplemental security income. (Tr. 222-34.) After her applications were denied initially (Tr. 70-107) and upon reconsideration (Tr. 108-46), a hearing was held before an administrative law judge (ALJ) on August 14, 2017 (Tr. 40-69). On February 27, 2018, the ALJ issued a written decision, concluding that Mccollim was not disabled. (Tr. 13-39.) The Appeals Council denied Mccollim's request for review on November 8, 2018. (Tr. 1-7.) This action followed. All parties have consented to the

full jurisdiction of a magistrate judge (ECF Nos. 20, 21), and the matter is now ready for resolution.

## ALJ'S DECISION

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1571-1576, 416.971-976. The ALJ found that Mccollim "has not engaged in substantial gainful activity since January 2, 2009, the alleged onset date." (Tr. 18.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). "In order for an impairment to be considered severe at this step of the process, the impairment must significantly limit an individual's ability to perform basic work activities." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). The ALJ concluded that Mccollim "has the following severe impairments: hemolytic anemia, obesity, fibromyalgia, ankylosing spondylitis or other severe spondyloarthropathies, benign hypermobility syndrome, migraine headaches, plantar fasciitis, degenerative disc disease, idiopathic kyphoscoliosis, anxiety disorder, and affective disorder." (Tr. 18-19.)

At step three, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the

2

impairments listed in 20 C.F.R. Part 4, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926) (called "The Listings"). If the impairment or impairments meets or medically equals the criteria of a listing, and meets the twelve-month duration requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. The ALJ found that Mccollim "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (Tr. 19.)

Between steps three and four, the ALJ must determine the claimant's residual functional capacity (RFC), "which is [the claimant's] 'ability to do physical and mental work activities on a regular basis despite limitations from her impairments.'" *Ghiselli v. Colvin*, 837 F.3d 771, 774 (7th Cir. 2016) (quoting *Moore*, 743 F.3d at 1121). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-8p. In other words, the RFC determination is a function-by-function assessment of the claimant's "maximum work capability." *Elder v. Asture*, 529 F.3d 408, 412 (7th Cir. 2008). The ALJ concluded that Mccollim has the RFC

> to perform sedentary work . . . except occasionally using foot controls; frequently balancing, crouching, kneeling, and stooping; frequently climbing ramps and stairs; and never crawling or climbing ladders, ropes or scaffolds. The claimant can frequently reach bilaterally, frequently reach overhead bilaterally, frequently handle bilaterally, frequently finger bilaterally, and frequently feel bilaterally. The claimant must avoid

3

> exposure to dangerous moving machinery or unprotected heights. The claimant is limited to understanding, carrying out and remembering no more than simple instructions; employed in a low stress job, defined as having only occasional decision-making required and only occasional changes in the work setting; and occasional interaction with the public. The claimant is allowed to sit or stand alternatively at will, provided she is off task no more than 10% of the work period.

(Tr. 21-22.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1565, 416.965. The ALJ concluded that Mccollim "has no past relevant work." (Tr. 31.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant can do any other work, considering her age, education, work experience, and RFC. At this step, the ALJ concluded that, "[c]onsidering [Mccollim's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Mccollim] can perform." (Tr. 31.) In reaching that conclusion, the ALJ relied on testimony from a vocational expert (VE) who testified that a hypothetical individual of Mccollim's age, education, work experience, and RFC could perform the requirements of a sorter, a document preparer, and an order clerk. (Tr. 31-32.)

After finding that Mccollim could perform work in the national economy, the ALJ concluded that Mccollim "has not been under a disability . . . from January 2, 2009, through the date of [his] decision." (Tr. 32.)

## STANDARD OF REVIEW

The court's role in reviewing an ALJ's decision is limited. It does not look at the evidence anew and make an independent determination as to whether the claimant is disabled. Rather, the court must affirm the ALJ's decision if it is supported by substantial evidence. *Moore*, 743 F.3d at 1120. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1120-21 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Thus, it is possible that opposing conclusions both can be supported by substantial evidence. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

It is not the Court's role to reweigh evidence or substitute its judgment for that of the ALJ. *Moore*, 743 F.3d at 1121. Rather, the court must determine whether the ALJ complied with his obligation to build an "accurate and logical bridge" between the evidence and his conclusion that is sufficient to enable a court to review the administrative findings. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). "This deference is lessened, however, where the ALJ's findings rest on an error of fact or logic." *Thomas*, 745 F.3d at 806. If the ALJ committed a material error of law, the court cannot affirm the ALJ's decision regardless

5

of whether it is supported by substantial evidence. *Beardsley*, 758 F.3d at 837; *Farrell v. Astrue*, 692 F.3d 767, 770 (7th Cir. 2012).

**ANALYSIS**

Mccollim argues that the ALJ erred in (1) evaluating the severity of her anemia impairment at step three; (2) assessing her statements concerning the intensity, persistence, and limiting effects of her symptoms; and (3) failing to account for her variable functioning in the RFC assessment.

**I.     Anemia**

A claimant is presumptively disabled if she has an impairment or combination of impairments of a severity that meets or medically equals the requirements of a listing and meets the twelve-month duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(iii) and (d), 416.920(a)(4)(iii) and (d). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *Scott v. Barnhart*, 297 F.3d 589, 595–96 (7th Cir. 2003); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

The ALJ determined that Mccollim's hematological impairment did not satisfy the criteria of Listing 7.05 or Listing 7.18. (Tr. 19.) Mccollim argues that the ALJ's analysis of whether her anemia satisfies the criteria of Listing 7.18 was perfunctory. (ECF No. 14 at 14-17.) The Commissioner argues that the ALJ's listing analysis is supported by

substantial evidence and that Mccollim has failed to meet her burden of showing that her hematological impairment satisfied every element of Listing 7.18. (ECF No. 18 at 4-10.)

Listing 7.18 states:

*Repeated complications of hematological disorders* (see 7.00G2), including those complications listed in 7.05, 7.08, and 7.10 but without the requisite findings for those listings, or other complications (for example, anemia, osteonecrosis, retinopathy, skin ulcers, silent central nervous system infarction, cognitive or other mental limitation, or limitation of joint movement), resulting in significant, documented symptoms or signs (for example, pain, severe fatigue, malaise, fever, night sweats, headaches, joint or muscle swelling, or shortness of breath), and one of the following at the marked level (see 7.00G4):

    A. Limitation of activities of daily living (see 7.00G5).
    B. Limitation in maintaining social functioning (see 7.00F6).
    C. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace (see 7.00G7).

*See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 7.18. "*Repeated complications* means that the complications occur on an average of three times a year, or once every 4 months, each lasting 2 weeks or more; or the complications do not last for 2 weeks but occur substantially more frequently than three times in a year or once every 4 months; or they occur less frequently than an average of three times a year or once every 4 months but last substantially longer than 2 weeks." *Id.* § 7.00G2. "*Marked* limitation means that the symptoms and signs of your hematological disorder interfere *seriously* with your ability to function." *Id.* § 7.00G4. "*Completing tasks in a timely manner* involves the ability to sustain concentration, persistence, or pace to permit timely completion of tasks commonly found in work settings." *Id.* § 7.00G7.

The court agrees that the ALJ's analysis of Listing 7.18 was perfunctory. The ALJ merely recited the elements of Listing 7.18 and stated, in conclusory fashion, that "[t]here [was] no evidence" to establish those elements. (*See* Tr. 19.) The Commissioner contends that the ALJ discussed other substantial evidence relevant to his step-three finding later in the decision. (ECF No. 18 at 5-8.) That may be true. But the elements of Listing 7.18 are very specific. By failing to discuss that evidence vis-à-vis the elements of Listing 7.18, the ALJ failed to build an accurate and logical bridge between the evidence and his conclusion.

Nevertheless, the ALJ's perfunctory analysis of Listing 7.18 was harmless. Mccollim has failed to show that she satisfied all the criteria of the listing. *See Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) (citations omitted) (explaining that it's the claimant's "burden to present medical findings that match or equal in severity all the criteria specified by a listing"). Specifically, the record does not support Mccollim's claimed marked limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. Mccollim points to evidence showing that she has some difficulty completing tasks. (ECF No. 14 at 16-17 (citing Tr. 262-70, 408-09, 435-36, 1148, 1176-78, 1322, 1425, 1443-44).) The record, however, shows that Mccollim's anemia symptoms did not seriously interfere with her ability to sustain concentration or pace. Mccollim remained capable of taking care of her pets, preparing simple meals, watching

television, paying bills, counting change, handling a savings account, and using a checkbook or money order. (Tr. 262-70.) Mccollim also reported being able to finish what she started, though she acknowledged "it might take [her] awhile" (Tr. 267), and she was able to perform the mental-status tasks during her psychological evaluation (Tr. 632-36). The ALJ thus reasonably concluded that Mccollim was only moderately limited in her ability to sustain concentration, persistence, or pace. (Tr. 21.) That finding is supported by the opinions of the consultative examiner (Tr. 636) and the state agency medical consultants (Tr. 80, 120-21).

Accordingly, the ALJ did not commit reversible error in evaluating the severity of Mccollim's anemia impairment at step three of the sequential evaluation process.

## II. Symptom evaluation

An ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p; *see also* 20 C.F.R. §§ 404.1529, 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p. "The determination or decision must contain specific reasons for the weight given to the

individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p.

The ALJ accurately recited the two-step process. (Tr. 22.) After describing the subjective allegations, the ALJ determined that Mccollim's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms." (*Id*.) However, the ALJ found that Mccollim's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 23.) The ALJ discounted Mccollim's subjective-symptom allegations because (1) she exhibited "reasonable physical function" upon examination with "relatively mild objective medical findings"; (2) she "reported some improvement in symptoms with largely routine treatment"; (3) "[t]he diagnostic evidence . . . fail[ed] to support a finding of abnormalities consistent with [her] allegations as to disabling pain"; (4) she "retained reasonable mental function despite experiencing symptoms of her mental health impairments"; and (5) "the nature and scope of [her] reported activities during the relative period [were] . . . not consistent with allegations of disabling symptoms of her physical and mental impairments." (*Id.* at 23-29.)

Mccollim argues that the ALJ impermissibly "cherry-picked" and misconstrued the record when evaluating her subjective allegations. She first contends that her main

10

symptoms during the relevant period—fibromyalgia pain, migraine headaches, shortness of breath, low energy, and extreme fatigue—were not of the type that would result in objective markers. (ECF No. 14 at 18.) The court agrees. The ALJ cited several physical examinations at which Mccollim exhibited normal reflexes, no swelling, no tenderness, normal sensation, no focal deficits, normal gait, normal strength, and normal range of motion. (*See* Tr. 24-25.) Although those findings likely provide a sufficient basis for discounting Mccollim's complaints of debilitating back pain, they are largely irrelevant to her other symptoms. *See Alexander v. Barnhart*, 287 F. Supp. 2d 944, 965-66 (E.D. Wis. 2003) (noting that traditional medical tests are largely unhelpful in evaluating symptoms related to fibromyalgia). None of those tests disproved Mccollim's fibromyalgia diagnosis[1] or assessed her ability to perform sustained activity. Also, that Mccollim denied headaches during a few visits did not contradict her migraine allegations.

Mccollim next asserts that improvement in symptoms does not equate with an ability to perform sustained work and that any improvement she experienced was only temporary and alternated with worsening symptoms/exacerbations. (ECF No. 14 at 19-22.) The court agrees that the ALJ overly relied on Mccollim's alleged improvement with treatment. The fact that at times Mccollim's symptoms were "stable" or "improving" was

---

[1] Indeed, Mccollim exhibited tender points consistent with fibromyalgia during several exams. (*See* Tr. 688, 1256, 1462.)

not indicative of her long-term functioning, and she continued to complain about debilitating symptoms throughout the relevant period. For example, while Mccollim reported that Topamax initially helped "a lot" with her migraines, a short while later her symptoms worsened despite medication. (Tr. 381-85.) She had a similar experience with Botox injections—an initial period of relief (Tr. 1689) followed by worsening symptoms (Tr. 1517). Likewise, while the ALJ's decision suggests significant relief from cervical radiofrequency ablation and medical branch blocks, Mccollim repeatedly reported that such relief was only temporary. (*See* Tr. 643, 653, 1906, 1947, 2056.) These fleeting moments of relief do not seriously undermine Mccollim's consistent complaints of pain and other symptoms.

Mccollim also maintains that the ALJ erred in relying on diagnostic evidence because x-rays are unable to substantiate the presence or severity of her main impairments, the alleged "mild" findings did not necessarily correspond to mild pain, and the ALJ played doctor when he interpreted raw imaging findings. (ECF No. 14 at 23.) The ALJ accurately noted the results of Mccollim's diagnostic imaging, quoting the findings almost verbatim (*See* Tr. 26-27); no expert testimony was needed to understand them. Nevertheless, as with the physical exams discussed above, the mild diagnostic results did not, without more, discredit Mccollim's symptoms stemming from her fibromyalgia, migraines, and anemia, which were unlikely to manifest on an x-ray.

Next, Mccollim contends that the ALJ ignored evidence from her mental-status examinations that detracted from his adverse assessment of her subjective complaints. (ECF No. 14 at 23-24.) She provides four examples: in March 2016, Mccollim cried when talking about her pain with her physician (Tr. 1413); the following month, Mccollim teared up again when discussing her pain and things that happened to her (Tr. 1443); during her initial mental-health assessment in May 2017, Mccollim was tearful throughout the session, her responses were disorganized, and she sometimes had difficulty remembering (Tr. 1176-77); and Mccollim was tearful during a follow-up psychotherapy session (Tr. 1178).

The ALJ did in fact discuss the initial psychotherapy assessment. (*See* Tr. 27 (citing Tr. 1176).) Although he failed to mention the other appointments, this alleged misstep did not constitute reversible error. The ALJ was not "required to discuss every snippet of information from the medical records that might be inconsistent with the rest of the objective medical evidence." *Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013) (citing *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009)). Moreover, the ALJ did not "analyze only the evidence supporting [his] ultimate conclusion while ignoring evidence that undermine[d] it." *Moore*, 743 F.3d at 1123 (citations omitted). Rather, the ALJ acknowledged that "[m]ental status examinations revealed abnormalities at times during the relevant period." (Tr. 27.) Mccollim has not pointed to any evidence in the record

demonstrating that she lacks the ability to maintain attention and concentration needed for full-time, competitive work.

Finally, Mccollim asserts that the ALJ erred in relying on her minimal activities of daily living and ignored limitations she reported with many of those activities. (ECF No. 14 at 24-25.) While it certainly was appropriate for the ALJ to consider Mccollim's reported activities, *see* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929, the court agrees that the ALJ largely failed to discuss limitations she reported with those activities. The ALJ discussed Mccollim's May 2015 function report but failed to mention that she claimed to bathe only every other day, needed help washing her hair, was unable to shave, tried to help fold laundry but otherwise was unable do any household chores, rarely drove, and shopped in stores only once per month. (Tr. 28 (citing Tr. 262-70).) The ALJ also did not acknowledge that Mccollim's ability to read, watch TV, sew, and take pictures depended on her pain level on a given day. (Tr. 266.) Similarly, in discussing the hearing testimony, the ALJ failed to mention that Mccollim stated her girlfriend helped with her personal care and did most of the household chores. (Tr. 29, 53-55.) In short, the ALJ presented Mccollim's daily activities in a manner that appears to overstate her reported capabilities.

Overall, the ALJ's evaluation of Mccollim's subjective symptoms lacks support in the record because he improperly rejected Mccollim's claims of fibromyalgia pain, migraine headaches, and anemia symptoms based on the lack of objective medical

findings and overly relied on Mccollim's temporary improvement with treatment and her limited ability to engage in daily activities.

## III. Variable functioning

Mccollim argues that the ALJ's RFC assessment failed to account for her variable functioning—that is, "some temporary periods of improvement alternating with periods of worsening/exacerbation." (ECF No. 14 at 26-27.) Mccollim maintains that her migraine headaches contributed to her variable functioning, requiring her to lie down for several hours a day multiple times each week. According to Mccollim, the ALJ's failure to adequately evaluate her variable functioning constitutes reversible error, as an incomplete RFC is insufficient to support a step-five finding.

Mccollim testified that she started getting migraine headaches when she was thirteen and that her migraines worsened around age eighteen. (Tr. 59.) At the time of the administrative hearing, Mccollim claimed she was having ten to fifteen bad migraines every month. (Tr. 50.) Mccollim stated that, when she got a migraine, she took her rescue and anti-nausea medications, put ice on her head, and lay down in a dark, cold room for about six hours. (Tr. 59.) She indicated that the medication did not really help (Tr. 50) and that Botox injections were "hit or miss"—sometimes they helped for a few months, other times they were unhelpful (Tr. 59-60).

The ALJ found that Mccollim's migraine headaches constituted a severe impairment, but his RFC assessment did not include any limitations stemming from

Mccollim's migraines. In particular, the ALJ did not address Mccollim's claimed need to lie down when experiencing a migraine. He also failed to provide good reasons for generally discounting Mccollim's alleged migraine symptoms. The fact that Mccollim denied having a headache during two medical visits, one in April 2012 (Tr. 434) and the other in November 2015 (Tr. 1307), says little about the persistence of her migraine symptoms. Within the relevant time period Mccollim frequently complained about debilitating migraines, for which she was prescribed medication. (*See, e.g.*, Tr. 381-85, 416-18, 423-24, 611, 624, 1305-06, 1517, 1689.)

Moreover, the ALJ overstated the effectiveness of Mccollim's migraine medications. He cited a treatment note from July 2014 wherein Mccollim reported that Topamax "helped a lot with her migraines." (Tr. 25 (citing Tr. 383).) However, the same treatment note indicated that, in the last month, Mccollim began having a migraine about an hour prior to each Topamax dose three times daily that lasted approximately three hours after taking her medication. (Tr. 383.) The ALJ also cited a treatment note from January 2017 wherein Mccollim reported a decrease in the frequency and severity of her migraines following a series of Botox injections. (Tr. 26 (citing Tr. 1689).) But the ALJ failed to mention that Mccollim still reported having six migraines per month. (Tr. 1689.) Similarly, the ALJ indicated that in April 2017 Mccollim reported that her previous Botox injection had helped her migraines. (Tr. 26 (citing Tr. 1517).) Mccollim, however, also stated that the injection provided only two weeks of relief and that, in fact, her migraines

16

had significantly worsened since her last visit. (Tr. 1517.) Thus, the ALJ erred in failing to address Mccollim's claimed functional limitations stemming from her migraine headaches despite support in the record.

The Commissioner argues that the ALJ did not err in considering Mccollim's migraines because no doctor opined that she had any resulting limitations, and the state agency medical consultants determined that, despite her migraines, Mccollim remained capable of performing sedentary work. (ECF No. 18 at 17-18.) Neither argument is persuasive. First, "the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (citations omitted). There is support in the record for Mccollim's claimed migraine limitations. Second, Mccollim's alleged worsening migraine symptoms occurred after the state doctors issued their opinions.

The failure to account for limitations stemming from Mccollim's migraine headaches potentially affected the ALJ's step-five finding, as the VE testified that the sample jobs she provided would not be available to an employee who needed to recline or lie down during the workday. (Tr. 68.) Accordingly, on remand the ALJ shall reevaluate Mccollim's migraines and any resulting limitations. If another hearing is held, the ALJ shall ensure that the hypothetical question presented to the VE accounts for all limitations supported by the record.

## CONCLUSION

For all the foregoing reasons, the court finds that the ALJ erred in (1) evaluating the intensity, persistence, and limiting effects of Mccollim's symptoms and (2) considering functional limitations stemming from Mccollim's migraine headaches. Based on this record, however, the court cannot determine whether Mccollim was disabled as of January 2, 2009. Accordingly, the court concludes that it is necessary to remand this matter to the Commissioner for reconsideration of the ALJ's RFC assessment and, potentially, his step-five finding.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and this matter is **remanded** for further proceedings consistent with this decision. The clerk of court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 13th day of January, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge